[No. B224456. Second Dist., Div. Two. Feb. 7, 2012.]

HOTELS NEVADA, LLC, et al., Plaintiffs and Respondents;
LOUIS HABASH, Plaintiff and Appellant, v.
L.A. PACIFIC CENTER, INC., Defendant and Respondent.

338

## COUNSEL

Ferguson Case Orr Paterson, Wendy C. Lascher; Snell & Wilmer, Richard A. Derevan and Todd E. Lundell for Plaintiff and Appellant.

Howard Kim & Associates, Jacqueline A. Gilbert; Booth, Mitchel & Strange and Christopher C. Lewi for Plaintiffs and Respondents.

Greenberg Traurig, Scott D. Bertzyk and Karin L. Bohmholdt for Defendant and Respondent.

## OPINION

**DOI TODD, Acting P. J.**—Following many years of litigation in both California and Nevada, the trial court confirmed an arbitration award in favor of defendant and respondent L.A. Pacific Center, Inc. (L.A. Pacific), including affirmative relief on its counterclaims. Plaintiff and appellant Louis Habash (appellant) appeals from the judgment confirming the award against him and two companies for which he was determined to be the alter ego, Hotels Nevada, LLC, and Inns Nevada, LLC (collectively Hotels Nevada). Currently in bankruptcy, Hotels Nevada dismissed its separate appeal.

We affirm. The trial court properly compelled arbitration, determined that the procedure by which the arbitration was conducted due to one arbitrator's unexpected surgery did not exceed the arbitrators' powers, and confirmed the award, rejecting appellant's claims that the issue arbitrated was barred by the law of the case and that there was no basis for personal liability.

### FACTUAL AND PROCEDURAL BACKGROUND

*The Parties and the Transaction.*

The two limited liability companies that comprise Hotels Nevada are owned and controlled by appellant. In 2003, Hotels Nevada owned the Alexis Park Hotel and the Americana Inns Apartments in Las Vegas, Nevada

(Property). At that time, appellant owed $4.5 million to HAR Inns, Nevada, an entity controlled through a limited liability company operated by his accountant and friend, Harvey Bookstein. Appellant also owed $500,000 to the State of Nevada for past due sales tax, $500,000 to his property manager and $1 million to general creditors.

L.A. Pacific, operated by Wen Shan Chang, is in the business of buying and selling real property. At the end of 2003, without knowledge of appellant's financial difficulties, L.A. Pacific began negotiating with Hotels Nevada for the purchase of the Property. By March 2004, the parties had settled on a purchase price of $70 million plus additional consideration of $5 million for Inns Nevada. Chang initially signed documents including a purchase and sale agreement (Agreement) and a memorandum of agreement (Memorandum) that provided for a 12-month holdback period for the $5 million, but instructed L.A. Pacific employee Eddy Chao that the holdback period must be extended to 60 months. Chao informed L.A. Pacific's principal negotiator, Richard Alter, of the required change.

During a March 24, 2004 meeting the following day, Alter discussed the 60-month holdback period with appellant. Appellant acceded to the 60-month holdback period and then signed the Agreement and Memorandum. The transaction closed in May 2004, and both preclosing checklists and the Memorandum ultimately recorded at closing showed a 60-month holdback period. Within four months of closing, appellant and his counsel began compiling versions of the transaction documents and researching the possibility of bringing suit against L.A. Pacific. In April 2005, appellant sent Alter a letter indicating a May 2005 payment due date; Alter responded that the payment threshold had not been reached. Throughout the same time period, L.A. Pacific had applied for and received certain building and gaming entitlements that enhanced the value of the Property. Appellant was aware of L.A. Pacific's development progress.

*Commencement of Litigation.*

In May 2005, Hotels Nevada filed a complaint in California against L.A. Pacific (California action) for rescission based on fraud, cancellation of written instruments based on illegality and conspiracy on the basis of allegations that L.A. Pacific had fraudulently manipulated the Memorandum and Agreement to provide for a 60-month holdback period to which Hotels Nevada had not agreed. (*Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 760 [50 Cal.Rptr.3d 700] (*Hotels Nevada*).) It simultaneously filed a notice of lis pendens. Hotels Nevada rejected L.A. Pacific's offer of a $5 million payment in exchange for removing the lis pendens.

In July 2005, L.A. Pacific moved to compel arbitration. (*Hotels Nevada, supra,* 144 Cal.App.4th at p. 760.) "It relied on section 14.01 of the Agreement, which provided in relevant part that 'each claim, dispute or controversy of whatever nature, arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement or the transactions contemplated hereby, including, without limitation, any claim based on contract, tort, or statute, or the arbitrability of any claim hereunder . . . shall be settled by final and binding arbitration conducted in Clark County, Nevada.' It also relied on a related provision, section 14.02 of the Agreement, providing in part that 'each signatory to this Agreement hereby waives its respective right to a jury trial of any permitted claim or cause of action arising out of this Agreement . . . .' " (*Id.* at p. 760.) The trial court denied the motion on the ground that, in light of Hotels Nevada's allegations, L.A. Pacific failed to meet its burden to show the existence of a valid agreement to arbitrate, and the first appeal ensued. (*Id.* at pp. 760–761.) We reversed and remanded the matter, directing the trial court to hold an evidentiary hearing before ruling on the motion to compel. (*Id.* at pp. 765–766.) We concluded that because L.A. Pacific met its threshold burden to establish the existence of a valid agreement to arbitrate, Hotels Nevada was required to offer more than the allegations of its complaint to demonstrate that the agreement was unenforceable. (*Id.* at pp. 764–765.)

Meanwhile, L.A. Pacific continued with its development of the Property and in the fall of 2005 entered into an agreement with Molasky Pacific, LLC (Molasky agreement), to sell the Property for $235 million, contingent in part on L.A. Pacific's removing the lis pendens. In January 2006, the trial court granted L.A. Pacific's motion to expunge the lis pendens on the ground that adequate relief could be secured by the giving of an undertaking.[1] Thereafter, L.A. Pacific posted an undertaking in the amount of $5 million. It also filed a cross-complaint in California against Hotels Nevada and appellant individually, alleging causes of action for abuse of process, slander of title, intentional interference with contract and indemnity, and Hotels Nevada responded by filing a special motion to strike the cross-complaint pursuant to Code of Civil Procedure section 425.16. The trial court granted the motion with respect to all claims except indemnity, and we later affirmed the order in *Hotels Nevada II.*

Simultaneously with L.A. Pacific's posting an undertaking in the California action, Hotels Nevada filed a similar and separate action in Nevada (Nevada action), as well as a separate notice of lis pendens in Nevada; the Nevada court denied L.A. Pacific's motions to expunge. As a consequence, L.A.

---

[1] Much of the background concerning this stage of the proceedings is set forth in our second decision in this matter, an unpublished opinion captioned *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (June 10, 2008, B198348) (*Hotels Nevada II*).

Pacific could not satisfy the lis pendens contingency in the Molasky agreement, and the buyer cancelled the $235 million sale. L.A. Pacific filed a separate counterclaim in Nevada, alleging that Hotels Nevada's filing of the lis pendens was an abuse of process designed to block L.A. Pacific's pending sale of the property. The Nevada district court initially denied L.A. Pacific's motion to compel arbitration of the Nevada claims, as well as its motion to dismiss or stay the Nevada action. L.A. Pacific appealed, and the Nevada Supreme Court reversed, finding that the evidence did not support the district court's order and that judicial economy would be served by staying the Nevada action pending resolution of the California action.

*Order Compelling Arbitration.*

In May 2007, Hotels Nevada dismissed its California complaint and asserted that the dismissal deprived the trial court of jurisdiction to proceed with L.A. Pacific's motion to compel arbitration.[2] The trial court disagreed, ruling that the pending motion to compel arbitration conferred jurisdiction on the court to resolve the issue of arbitrability.

Following a 16-day evidentiary hearing, the trial court determined that Hotels Nevada had failed to meet its burden to establish the defense of fraud in the execution and concluded that the matter should be arbitrated in accordance with the Agreement. The trial court acknowledged at the inception and throughout the hearing that the only issue to be resolved was whether Hotels Nevada could meet its burden to establish fraud in the execution as an affirmative defense to arbitration. Though it expressly made credibility findings, it determined those findings would not be entitled to preclusive effect and cautioned that another fact finder could reach a different conclusion. After outlining the evidence showing that the Agreement appellant had signed, in fact, contained a 12-month holdback provision, the trial court concluded: "Considering the totality of the evidence—including Driggs' [(Hotels Nevada's transactional counsel)] failure to object to the closing checklists, even after he noticed their provision for a 60-month outside payment date, and the uncontradicted testimony that, in the days prior to closing, Driggs himself described section 2.06(b) of the contract as a 'five-year' holdback—the Court finds that there was no fraud in the execution of the Agreement containing the arbitration clause at issue. Respondents have failed to meet their burden of establishing all the elements of fraud in the execution. In particular, Respondents have not established an actual intent by anyone to deceive them, including Alter [(L.A. Pacific's representative)], Katz [(L.A. Pacific's counsel)], Kirkbride [(L.A. Pacific's counsel)], or third

---

[2] The dismissal also led to the third appeal in this case, *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (Aug. 11, 2009, B207431 [nonpub. opn.]), in which we affirmed an award of attorney fees and costs to L.A. Pacific stemming from the dismissal.

party Peh [(escrow officer)], at any time. The blatant and repeated statements in the closing checklist as to the duration of the holdback demonstrate that at all relevant times Petitioner was frank about its position as to the terms to which it thought it was contracting. The other communications by Petitioner to third parties during this period reinforce this conclusion as to Petitioner's lack of an intent to hide the change it had made to the Agreement to reflect a 60-month holdback."

The trial court denied Hotels Nevada's and appellant's motion to stay enforcement of the order compelling arbitration and for "curative relief" on the ground that L.A. Pacific misrepresented the scope of Hotels Nevada's defenses to arbitration. We denied Hotels Nevada's petition for writ of mandate challenging the order. (*Hotels Nevada LLC v. Superior Court*, B206576.)

*The Arbitration.*

In 2008, the parties selected an arbitration panel through JAMS, comprised of retired California Court of Appeal Justice Edward J. Wallin, retired California Superior Court Judge John W. Kennedy, Jr., and retired United States District Judge David W. Hagen, and the panel ruled on several prehearing motions in late 2008 and early 2009. In particular, the parties stipulated and the arbitrators ordered that the claims asserted by L.A. Pacific in Nevada would be added as affirmative claims in the arbitration and that, in turn, Hotels Nevada would have the opportunity to argue whether the claims were barred by Nevada's anti-SLAPP statute. The arbitrators ultimately denied Hotels Nevada's special motion to dismiss, which was brought pursuant to Nevada law.

The panel conducted a 20-day arbitration between January 12 and February 27, 2009.[3] Following the first week of the hearing, Justice Wallin learned that he was required to undergo surgery in early February 2009, which would preclude him from being physically present during the remainder of the arbitration. Although Hotels Nevada and appellant objected, the panel determined that the commercial arbitration rules of the American Arbitration Association (AAA Rules) permitted the arbitration to proceed as scheduled. The panel proposed that Judges Kennedy and Hagen would be physically present at the hearing, while each day Justice Wallin would be given a transcript and videodisk of the most recently transcribed daily hearing, together with document binders to include exhibits identified by witness. Justice Wallin would physically rejoin the panel when medically feasible.

---

[3] For the convenience of the parties, counsel and witnesses, the parties stipulated to conduct the arbitration in Orange County, California, notwithstanding the Agreement's requirement that the arbitration be held in Clark County, Nevada.

Finally, after the presentation of evidence and the submission of posthearing briefs, the panel would collectively deliberate, decide the matter and issue an award.

The panel issued an interim award in July 2009. Expressly finding not credible the testimony of appellant and his transactional attorney, Jon Douglas Driggs, the arbitrators determined the evidence showed that the parties agreed to the 60-month outside payment date and, in turn, that L.A. Pacific made no misrepresentation about the holdback period. The panel further found that L.A. Pacific had not breached the Agreement in any respect, and therefore denied Hotels Nevada's claims for rescission and damages based on fraud and breach of contract.

With respect to L.A. Pacific's affirmative claims, the arbitrators first concluded that the evidence satisfied the elements of alter ego liability under Nevada law: Appellant influenced and governed Hotels Nevada; he had used Hotels Nevada's assets as his personal property and repeatedly disregarded any rights of the companies or investors; and it would promote injustice to adhere to the fiction of a separate entity. Again applying Nevada law as directed by the Agreement, the arbitrators next found that the conduct of Hotels Nevada and appellant amounted to abuse of process and slander of title. The panel further concluded that Hotels Nevada's and appellant's conduct subsequent to the filing of the California action constituted intentional interference with the Molasky agreement. The arbitrators denied relief for L.A. Pacific's other claims—including appellant's fraud by concealing his financial condition at the time of the Agreement, breach of contract for falsely asserting an outside payment date and breach of the agreement to arbitrate— because liability resulted in no actionable damage beyond that shown by the other claims.

The award concluded that L.A. Pacific had been damaged by Hotels Nevada and appellant, its alter ego, in the following amounts: $146,288,000 for the loss of the sale of the Property through the Molasky agreement; $53,500 representing a payment to Molasky for its costs incurred in connection with the Molasky agreement; $200,000 for the $5 million bond premium payment; and $31,269 on the indemnity claim for a real estate broker's commission. The arbitrators then subtracted the $5 million holdback amount that L.A. Pacific never paid and awarded damages in the amount of $141,572,769. Though finding a factual basis for an award of punitive damages, the arbitrators declined to assess punitive damages in light of the enormous compensatory damages award.

The arbitrators also awarded L.A. Pacific declaratory relief in the form of quieting title to the Property in favor of L.A. Pacific and cancelling all

recorded lis pendens and the Memorandum. The panel also awarded reasonable attorney fees and costs to L.A. Pacific according to proof, leaving as the only outstanding issue the amount of the attorney fee award.

Hotels Nevada and appellant objected to the interim award and challenged it in multiple ways. They unsuccessfully moved to reopen the proceedings for the purpose of offering additional evidence concerning remedies, including damages and alter ego liability. They unsuccessfully moved JAMS to disqualify the panel on the ground that Judge Hagen failed to disclose he knew one of the witnesses. They unsuccessfully applied for a temporary restraining order and preliminary injunction in the trial court, seeking to stay the balance of the arbitration. They also unsuccessfully applied to the Nevada Supreme Court for an order lifting the stay of the Nevada action so that they could proceed with a "trial de novo" in Nevada.

On October 27, 2009, the panel issued a final award. The arbitrators' findings of fact and conclusions of law remained unchanged from the interim award. The final award described several of Hotels Nevada's and appellant's challenges to the interim award and expressly denied their request to reopen the proceedings. After making certain corrections to the damage award, which reduced the total to $140,371,269, the arbitrators evaluated the evidence submitted by L.A. Pacific regarding the amount of attorney fees and costs incurred and awarded $3 million in attorney fees and $759,100 in costs against Hotels Nevada and appellant as its alter ego.

*Confirmation of the Arbitration Award.*

On November 6, 2009, L.A. Pacific filed a petition to confirm the arbitration award. One day earlier, appellant had filed for bankruptcy on behalf of Hotels Nevada in Nevada; L.A. Pacific acknowledged the automatic stay provisions and therefore pursued confirmation only against appellant individually and another entity not in bankruptcy. The California action was removed to bankruptcy court on November 20, 2009. In January 2010, the bankruptcy court granted L.A. Pacific's motion for remand/abstention, which restored jurisdiction over this matter to the trial court. The Nevada bankruptcy court likewise entered an order lifting the automatic stay for the purpose of permitting L.A. Pacific to pursue the confirmation petition and attorney fee motion pending in California.[4]

---

[4] We grant L.A. Pacific's second request for judicial notice of pleadings and transcripts related to the bankruptcy filings. (See Evid. Code, § 452, subd. (d)(2).)

On January 25, 2010, appellant filed a motion to vacate the arbitration award in federal bankruptcy court, which he later refiled in the trial court.[5] The following month, Hotels Nevada filed a combined motion to vacate and opposition to the petition to confirm the arbitration award in the trial court.

The trial court granted the petition to confirm and denied the motions to vacate the award. It expressly rejected Hotels Nevada's and appellant's arguments supporting their motions to vacate, explaining that any argument the award violated this court's decision affirming the grant of the special motion to strike L.A. Pacific's cross-complaint related to an unreviewable legal error; the panel had discretion as to how to address Justice Wallin's absence and its procedure did not impinge on Hotels Nevada's and appellant's substantive rights; there were no grounds to disqualify Judge Hagen; and Hotels Nevada and appellant waived their other procedural challenges by participating in the arbitration.

Judgment was entered in March 2010, and Hotels Nevada and appellant separately appealed. The chapter 7 trustee for Hotels Nevada filed a limited joinder to one section of appellant's opening brief and later stipulated with L.A. Pacific for the dismissal of its appeal.

## DISCUSSION

Appellant divides his challenges to the arbitration award by timing, arguing that there was error before, during and after the arbitration. We find no merit to his challenges.

### I. *The Trial Court Properly Compelled Arbitration.*

■ "The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.] There is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate. [Citation.]" (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].) Appellant contends that the trial court should not have granted the petition to compel arbitration because the evidence adduced during the 16-day hearing showed there was no meeting of the minds on a material point of the Agreement that included the arbitration provision and, alternatively, that Hotels Nevada met its burden to show fraud in the execution as a defense to arbitration. (See *Graham v. Scissor-Tail, Inc.* (1981)

---

[5] We reject L.A. Pacific's argument that we may dispose of appellant's claims on the ground his motion to vacate was untimely. Appellant filed his motion within 10 days of the order remanding the matter to state court.

28 Cal.3d 807, 811, fn. 1 [171 Cal.Rptr. 604, 623 P.2d 165] [propriety of order compelling arbitration is reviewable on appeal from a judgment confirming the award].)

"Whether the parties formed a valid agreement to arbitrate is determined under general California contract law. [Citations.] Hence, when ruling on a petition to compel arbitration, the superior court may consider evidence on factual issues such as contract formation bearing on the threshold issue of arbitrability. [Citation.]" (*City of Vista v. Sutro & Co.* (1997) 52 Cal.App.4th 401, 407 [60 Cal.Rptr.2d 488]; accord, *Engineers & Architects Assn. v. Community Development Dept., supra*, 30 Cal.App.4th at p. 653.) "Where the trial court's decision on arbitrability is based upon resolution of disputed facts, we review the decision for substantial evidence. [Citation.] In such a case we must ' "accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of the credibility of witnesses and the weight of the evidence." ' [Citation.]" (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71 [100 Cal.Rptr.2d 683].)

■ As a threshold matter, we conclude that appellant has forfeited any challenge to the order compelling arbitration due to his failure to provide an adequate record. Appellant has provided us with neither a reporter's transcript of the 16-day hearing nor copies of the documentary evidence offered during that hearing. "It is the duty of an appellant to provide an adequate record to the court establishing error. Failure to provide an adequate record on an issue requires that the issue be resolved against appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295 [240 Cal.Rptr. 872, 743 P.2d 932].)" (*Barak v. The Quisenberry Law Firm* (2006) 135 Cal.App.4th 654, 660 [37 Cal.Rptr.3d 688].) This principle stems from the well-established rule of appellate review that a judgment or order is presumed correct and the appellant has the burden of demonstrating prejudicial error. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 [129 Cal.Rptr.3d 421]; *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [122 Cal.Rptr.2d 167].) By failing to provide an adequate record, appellant cannot meet his burden to show error and we must resolve any challenge to the order against him. (See *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 [93 Cal.Rptr.2d 97].)

Even absent forfeiture, we would find no merit to appellant's contentions. Appellant first contends that arbitration should not have been compelled on the ground there was no enforceable agreement to arbitrate; he argues there was no meeting of the minds on a material point in the Agreement—that is, the duration of the $5 million holdback. (See *Banner Entertainment, Inc. v.*

*Superior Court* (1998) 62 Cal.App.4th 348, 357–358 [72 Cal.Rptr.2d 598] ["California law is clear that there is no contract until there has been a meeting of the minds on *all* material points."].) But whether there was a meeting of the minds was not an issue intended to be resolved by the evidentiary hearing. Rather, as the trial court explained in the beginning of its order compelling arbitration, during the final status conference "the parties confirmed that: (1) the sole issue to be resolved in this evidentiary hearing was Respondents' affirmative defense to arbitration of 'fraud in the execution' (because L.A. Pacific already had met its burden of establishing an agreement to arbitrate); and (2) if Respondents could not meet that burden, the parties' dispute should be ordered to arbitration. All parties agreed and, based upon that understanding, this Court exercised its discretion to reorder proof and argument, such that Respondents received the first and last word (both in terms of evidence and argument)." Appellant may not repudiate Hotels Nevada's agreement concerning the scope of the evidentiary hearing. (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 [257 Cal.Rptr. 397] ["an appellant waives his right to attack error by expressly or implicitly agreeing or acquiescing at trial to the ruling or procedure objected to on appeal"].)

We likewise find no merit to appellant's alternative contention that the evidence outlined by the trial court established fraud in the execution. Selectively quoting from the order compelling arbitration, appellant argues the trial court's finding that the Agreement's holdback provision was altered after signing established fraud in the execution as a matter of law. The trial court made numerous additional factual findings, however, leading it to the conclusion that Hotels Nevada failed to meet its burden to establish the elements of fraud in the execution. It determined that Hotels Nevada failed to establish any intent to deceive on the part of L.A. Pacific, given that its representatives were repeatedly frank and open about their position that they intended for the transaction to contain a 60-month holdback period. (See *Hedden v. Waldeck* (1937) 9 Cal.2d 631, 636 [72 P.2d 114] [plaintiff has burden of demonstrating intent to deceive as an element of fraud in the execution].) The factual finding that L.A. Pacific "broadcast its understanding of a supposedly covert change" likewise precluded any finding of reasonable reliance on Hotels Nevada's part. (See *Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 958 [85 Cal.Rptr.3d 817] [because reasonable reliance is a necessary element of the defense of fraud in the execution, "the contract is not considered void due to the fraud if the plaintiff had a reasonable opportunity to discover the true terms of the contract"].)

Accordingly, substantial evidence supported the order compelling arbitration.

## II. *The Trial Court Properly Concluded That the Arbitrators Did Not Exceed Their Power.*

Appellant next contends that the arbitrators exceeded their powers by proceeding with the arbitration once Justice Wallin's need for surgery was disclosed; he argues the procedure they adopted violated the arbitration provision in the Agreement. Again, we disagree.[6]

After the first week of the hearing, when Justice Wallin learned that he was required to undergo unanticipated surgery, the arbitrators and counsel held two telephonic hearings. The goal of the panel was to not disrupt or unduly delay the hearing, and the arbitrators advised that a continuance of at least seven months would be required if Judges Kennedy and Hagen awaited Justice Wallin's return. To avoid such a delay, the panel proposed that the arbitration would proceed as scheduled with Judges Kennedy and Hagen in the hearing room, and Justice Wallin reviewing daily a videodisk of the hearing and a document binder of the exhibits. The panel further proposed that Justice Wallin would return to the hearing room if medically feasible. Following the presentation of evidence and submission of briefs, all three panel members would deliberate together, decide the matter and issue an award.

The panel rejected appellant's arguments that the proposed procedure affected the overall adjudication of the case, and that Justice Wallin's absence would affect his ability to determine witnesses' credibility and rule on the admissibility of evidence. It also determined that the AAA Rules authorized the proposed procedure by allowing, in the event of a panel vacancy after the hearing has commenced, for fewer than all of the arbitrators to " 'continue with the hearing and determination of the controversy, unless the parties agree otherwise,' " and further providing arbitrators " 'shall take such steps as they may deem necessary or desirable to avoid delay and to achieve a just, speedy and cost-effective resolution of Large, Complex Commercial Cases.' " (See AAA Rules, rules R-19(b) & L-4(a).) The panel further concluded that its proposed procedure comported with Nevada Revised Statutes section 38.231, subdivision 1, which permits an arbitrator to conduct an arbitration "in such manner as the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding." (See also Nev. Rev. Stat. § 38.228 [applying certain provisions of Nev. Rev. Stat. § 38.231 where two or more arbitrators conduct the arbitration].) In denying appellant's motion to vacate the award, the trial court concluded that the procedure adopted by the panel was permissible under either California or Nevada law. It reasoned that the panel

---

[6] We likewise disagree with L.A. Pacific's disingenuous argument that appellant waived any challenge to the arbitrators' proceeding in Justice Wallin's absence. Even the arbitrators acknowledged in the award that Hotels Nevada disagreed with the procedure.

had discretion as to how to address Justice Wallin's physical absence from the proceedings, and that "the conduct of the arbitrators did not impinge in any substantive way on these parties['] statutory or contractual rights regarding the conduct of the arbitration and resulting award."

Appellant maintains that the Agreement's arbitration provision did not allow for this procedure and that, therefore, the arbitrators exceeded their powers. (Code. Civ. Proc., § 1286.2, subd. (a)(4); *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443 [123 Cal.Rptr.2d 122] ["an arbitrator exceeds his powers when he acts in a manner not authorized by the contract or by law"].) In pertinent part, the Agreement provided: "All such Arbitrable Claims shall be settled by three (3) arbitrators in accordance with the Commercial Arbitration Rules then in effect of the American Arbitration Association." It further provided that neutral arbitrators would be provided through JAMS and that, "[e]xcept as provided herein, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceeding[s] pursuant to this Section 14.01." In the following paragraph, the Agreement stated: "The arbitration procedures shall follow the substantive Law of the State of Nevada, including the provisions of statutory law dealing with arbitration, as it may exist at the time of the demand for arbitration, insofar as said provisions are not in conflict with this Agreement" and excepting certain notice provisions not relevant here.

■ " 'The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate. [Citation.] Awards in excess of those powers may . . . be corrected or vacated by the court.' [Citation.]" (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1185 [77 Cal.Rptr.3d 613, 184 P.3d 739].) The trial court's determination as to whether an arbitrator exceeded his powers is an issue of law that we review de novo. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 [36 Cal.Rptr.2d 581, 885 P.2d 994]; *San Francisco Housing Authority v. Service Employees Internat. Union, Local 790* (2010) 182 Cal.App.4th 933, 944 [107 Cal.Rptr.3d 62].) In contrast to our review of the trial court's judgment, "we 'pay substantial deference to an arbitrator's determination of his own authority.' [Citation.] Any doubts about the arbitrator's power to decide these issues must be resolved in his favor." (*Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 347–348 [54 Cal.Rptr.3d 185].)

■ We conclude that the arbitrators did not exceed the powers accorded them by the Agreement in fashioning a remedy that enabled the arbitration to proceed without Justice Wallin's physical presence at the hearing each day. (See *Advanced Micro Devices, Inc. v. Intel Corp., supra,* 9 Cal.4th at p. 375 [reviewing court is "not in a favorable position to substitute its judgment for that of the arbitrators as to what relief is most just and equitable under the

circumstances"].) The procedure employed by the panel did not violate any provision of the Agreement. Nothing in the Agreement's arbitration provision expressly precluded the procedure adopted by the panel, nor did it mandate that the arbitration hearing be conducted in such a manner so as to imply that the physical presence of all three arbitrators was mandated. Rather, the Agreement provided only that any arbitrable claims "shall be settled by three (3) arbitrators . . . ."

The Agreement addressed the procedural requirements of the arbitration by referring—albeit somewhat ambiguously—to three different sets of rules. Nonetheless, the arbitration procedure did not contravene any of the rules embodied in the Federal Arbitration Act, the AAA Rules or Nevada law. Preliminarily, the Agreement stated that the Federal Arbitration Act would apply, "[e]xcept as provided herein . . . ." Because the Agreement expressly provided for the arbitrable claims to be settled in accordance with the AAA Rules and for the arbitration procedures to follow Nevada statutory law dealing with arbitration, the Federal Arbitration Act did not apply.[7]

■ In separate paragraphs, the Agreement first provided that the arbitrators were to act in accordance with the AAA Rules and thereafter stated that the "arbitration procedures" were to follow substantive Nevada law, "including the provisions of statutory law dealing with arbitration," to the extent such provisions were not in conflict with the Agreement. Because the Agreement preliminarily directed the arbitrators to follow the AAA Rules, we construe it to require the arbitration procedures to conform to Nevada statutory law unless in conflict with the AAA Rules. According to Nevada Revised Statutes section 38.231, subdivision 1, "[a]n arbitrator may conduct an arbitration in such manner as the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding." When there is more than one arbitrator, Nevada Revised Statutes section 38.228 directs that "the powers of an arbitrator must be exercised by a majority of the arbitrators, but all of them shall conduct the hearing under subsection 3 of NRS 38.231."[8] (Nev. Rev. Stat. § 38.228.) While appellant construes the phrase "all of them shall conduct the hearing" to mean that all arbitrators

---

[7] In any event, nothing in the Federal Arbitration Act precludes the procedure employed here. (See 9 U.S.C. § 5 [requiring that the parties follow the method for appointing arbitrators set forth in the arbitration agreement and providing that the court shall appoint an arbitrator if there is a lapse in appointing an arbitrator or a vacancy].)

[8] Nevada Revised Statutes section 38.231, subdivision 3 provides: "If an arbitrator orders a hearing, the arbitrator shall set a time and place and give notice of the hearing not less than 5 days before the hearing begins. Unless a party to the arbitral proceeding makes an objection to lack or insufficiency of notice not later than the beginning of the hearing, the party's appearance at the hearing waives the objection. Upon request of a party to the arbitral proceeding and for good cause shown, or upon the arbitrator's own initiative, the arbitrator may adjourn the hearing from time to time as necessary but may not postpone the hearing to a time later than that fixed by the agreement to arbitrate for making the award unless the parties to the arbitral proceeding consent to a later date. The arbitrator may hear and decide the controversy upon the evidence

must be physically present at all times, we read that phrase not in isolation but in the context of the entire sentence. (See *Fernandez v. California Dept. of Pesticide Regulation* (2008) 164 Cal.App.4th 1214, 1228 [80 Cal.Rptr.3d 418] ["we do not view the words of a statute in isolation, but construe them in context, keeping in mind the statutory purpose, interpreting legislation reasonably and attempting to give effect to the apparent purpose of the statute"].)

The statute requires that all arbitrators "conduct" the hearing in accordance with the procedural requirements of a separate statute that addresses scheduling, appearances and decision. We therefore interpret the requirement that all arbitrators shall conduct the hearing to apply to the manner in which they manage or control the hearing. (See generally Webster's 3d New Internat. Dict. (1976) p. 474 [as a verb, "conduct" means "to lead[,] run, manage, [or] direct" (some capitalization omitted)].) We decline to construe the Nevada statute to direct that the arbitrators conduct the hearing so as to require all the arbitrators' physical presence in all instances.

The AAA Rules are not in conflict. Like the Nevada statutory scheme, the AAA Rules are silent on the issue of whether arbitrators may hear a matter via the procedural remedy adopted here. (See AAA Rules, rule R-23 [addressing attendance of parties and witnesses].) But the rules allow arbitrators wide discretion in the management of proceedings, providing that "[a]rbitrator(s) shall take such steps as they may deem necessary or desirable to avoid delay and achieve a just, speedy and cost-effective resolution of large, complex commercial cases." (AAA Rules, rule L-4.) Moreover, though appellant objected to the procedure adopted by the panel, he did not seek relief under the AAA Rules, which provide that the AAA may declare an office vacant if it can be shown that an arbitrator is unable to perform the duties of office. (AAA Rules, rule R-19(a).) In the event of a vacancy, the remaining panel may continue with the arbitration or a substitute arbitrator may be appointed.[9] Though appellant now argues that Justice Wallin's absence from the hearing room essentially rendered him unable to perform his duties, he did not request that his office be declared vacant. (See AAA Rules, rule R-37 ["Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object."].) The leeway afforded by Nevada law and the AAA Rules, coupled with appellant's failure to pursue all available remedies below, compels the

produced although a party who was duly notified of the arbitral proceeding did not appear. The court, on request, may direct the arbitrator to conduct the hearing promptly and render a timely decision."

[9] When a vacancy results because an appointed arbitrator is unable to act, Nevada law requires that a party make a motion to the trial court for the appointment of a successor. (Nev. Rev. Stat. § 38.226, subd. 1.)

conclusion that the manner in which the arbitration was conducted provides no basis for vacating the award.

The cases on which appellant relies are inapposite. In *Parker v. McCaw* (2005) 125 Cal.App.4th 1494, 1500–1502 [24 Cal.Rptr.3d 55], the trial court granted a motion to compel arbitration, but also ordered that two arbitrations be consolidated and conducted before a single arbitrator. The arbitration agreements differed, with one providing for a single arbitrator and the other requiring three arbitrators. (*Ibid.*) On an appeal from a judgment confirming the award by a single arbitrator, the appellate court concluded that "the trial court erred by resolving the conflicting arbitration provisions in favor of a single arbitrator," as the three-arbitrator panel was a substantial contractual right. (*Id.* at p. 1506.) The *Parker v. McCaw* court relied on *Szuts v. Dean Witter Reynolds, Inc.* (11th Cir. 1991) 931 F.2d 830, 831, also cited by appellant, where the court held that two arbitrators conducting the arbitration and rendering an award after the third arbitrator was disqualified violated the provision in the arbitration agreement requiring that an arbitration be conducted before three arbitrators. Here, in contrast, appellant had the benefit of a three-arbitrator panel. (See *Parker v. McCaw, supra,* at p. 1506 ["A three-arbitrator panel allows the arbitrators to hear, consider, and weigh the evidence and arguments presented by the parties, and to participate in consultation and deliberation collectively."].)

III. *The Trial Court Properly Confirmed the Arbitration Award.*

■ Appellant challenges the confirmation of the award against him on two grounds: First, he contends that L.A. Pacific's recovery was barred by the law of the case and, second, that he was not a party to the arbitration agreement. We could characterize both of these claims as unreviewable. "[B]ecause it vindicates the intentions of the parties that the award be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, 'The merits of the controversy between the parties are not subject to judicial review.' [Citations.] More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. [Citations.] [¶] Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899]; see also *Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 407–408 [29 Cal.Rptr.3d 881].) Nonetheless, because appellant's claims are equally capable of being characterized as involving acts that exceeded the arbitrators' authority (Code Civ. Proc., § 1286.2, subd. (a)(4)), we will review his claims on the merits. Again, "[a]n appellate court reviews a determination of whether an arbitrator has exceeded his or

her powers de novo, but displays substantial deference towards the arbitrator's determination of his or her contractual authority. [Citations.] All reasonable inferences must be drawn in support of the award." (*Jones v. Humanscale Corp., supra*, at p. 408.)

### A. L.A. Pacific's Claims Were Not Barred by the Law of the Case.

In *Hotels Nevada II*, we relied on well-established California law to conclude that Hotels Nevada's recordation of a lis pendens constituted protected activity under Code of Civil Procedure section 425.16, subdivision (e)(2) and determined that "[b]ecause the alleged slander of title and interference with contractual relations claims were based on the recordation of the lis pendens, they were subject to the anti-SLAPP statute." (*Hotels Nevada II, supra*, B198348.) We also concluded that the trial court properly rejected L.A. Pacific's assertion that the recordation of the Nevada lis pendens did not constitute protected activity because it was illegal as a matter of law. (*Ibid.*) We reasoned that, at the time of the motion to strike, L.A. Pacific had failed to establish illegality because the Nevada court had three times approved the lis pendens recordation by denying L.A. Pacific's motion to expunge, denying its motion for reconsideration and denying its offer to post a bond. (*Ibid.*)

In October 2008, approximately five months after our decision, the Nevada Supreme Court issued its decision reversing the district court's order denying L.A. Pacific's motion to compel arbitration, but further concluding "that judicial economy will be best served by staying the Nevada action pending the resolution of the California action, which will bar relitigation of issues actually litigated in California under the doctrine of collateral estoppel." Thereafter, in November 2008 the parties conducted a pretrial conference before the arbitration panel, one purpose being to "finaliz[e] the scope of the claims to be resolved by the Panel in this arbitration, in light of the Nevada Supreme Court's October 22, 2008 Decision . . . ." Following the conference, the arbitrators issued an order captioned "Order Adding Additional Claims by L.A. Pacific Center, Inc. and Setting Briefing Schedule for Anti-SLAPP Motion Under Nevada Law," which identified the counterclaims asserted by L.A Pacific against Hotels Nevada and appellant as abuse of process, slander of title, intentional interference with contractual relations and prospective economic advantage and indemnity, and provided: "To resolve their differences, the parties have stipulated and agreed that: (a) L.A. Pacific may add its Counterclaims asserted in the Nevada Action to the claims already asserted in this arbitration; and (b) Sellers in turn shall have an opportunity to brief and argue whether some or all of L.A. Pacific's claims in this arbitration (including, but not limited to, the Counterclaims) constitute a 'SLAPP' under Nevada's anti-SLAPP statute." All counsel signed the order.

In January 2009 the arbitrators denied Hotels Nevada's special motion to strike brought pursuant to Nevada law. Addressing L.A. Pacific's counterclaims on the merits, the arbitration award described the elements of each claim under Nevada law and concluded that the evidence adduced during the hearing satisfied those elements. The judgment following the order confirming the award similarly outlined the procedural history concerning the additional claims, noting that "the Seller Parties stipulated, through counsel of record, that L.A. Pacific's Nevada counterclaims all could be added, tried and resolved under Nevada law (provided that they be allowed to bring an anti-SLAPP motion under Nevada law, which they did and lost). Thus, in addition to the original claims asserted at the outset of the arbitration, L.A. Pacific presented additional tort claims for abuse of process, slander of title, and interference with contract, along with a contract claim for indemnity."

Despite having stipulated to resolve L.A. Pacific's Nevada claims through arbitration, appellant now contends that the arbitrators exceeded their powers by resolving those claims because they were barred by our earlier decision in *Hotels Nevada II*. He argues L.A. Pacific's tort recovery could not be based on the recordation of the Nevada lis pendens because it was the law of the case that such activity was protected under Code of Civil Procedure section 425.16.

■ " 'The law of the case doctrine states that when, in deciding an appeal, an appellate court "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal." ' [Citation.]" (*Quackenbush v. Superior Court* (2000) 79 Cal.App.4th 867, 874 [94 Cal.Rptr.2d 282].) The law of the case may apply even where the appeal is from a decision short of a full trial, including a judgment on a demurrer, a nonsuit order or denial of an anti-SLAPP motion. (*Bergman v. Drum* (2005) 129 Cal.App.4th 11, 15, fn. 3 [28 Cal.Rptr.3d 112].) However, "the doctrine of law of the case does not prevent retrial of an issue, although it does require that the same conclusion be reached if that matter is retried on the same evidence. [Citation.]" (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1261 [131 Cal.Rptr.2d 628]; see also *People v. Scott* (2000) 85 Cal.App.4th 905, 924 [102 Cal.Rptr.2d 622] [rejecting argument that the law of the case doctrine compelled the same result on retrial of a prior conviction allegation, as "the doctrine cannot be used to *prevent* the retrial. It merely means that, in order to succeed, the People will have to produce *additional* evidence at such retrial."].)

■ Here, similarly, the law of the case doctrine was unavailable to prevent the arbitration of L.A. Pacific's counterclaims brought in Nevada. The doctrine applies to a rule of law necessarily decided in an appellate

decision and determines " 'the rights of the same parties in any subsequent retrial or appeal in the *same* case.' [Citation.]" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 301–302 [253 Cal.Rptr. 97, 763 P.2d 948], italics added.) Noticeably absent from appellant's argument is the fact it was Hotels Nevada that decided to pursue similar claims in both California and Nevada. And until now, appellant maintained that the California and Nevada actions were meaningfully different and was content to reap the benefit of the Nevada court's favorable rulings denying L.A. Pacific's multiple attempts to expunge the Nevada lis pendens. Indeed, in its arguments to the Nevada Supreme Court as to why the California action should have no impact on the Nevada action, Hotels Nevada wrote that it intended to prosecute its action only in Nevada and distinguished the California action on the ground that it was "no longer pending, there are different jurisdictions, the causes of action were never the same and California could not grant full relief because there was no California quiet title claim and the property is in Nevada." Moreover, in an argument equally applicable to our prior ruling on Hotels Nevada's anti-SLAPP motion, Hotels Nevada argued that the trial court's order compelling arbitration did not govern the Nevada action because the court applied California, not Nevada, law.

██ In short, while our prior opinion constituted the law of the case as to the disposition of the three tort claims alleged in L.A. Pacific's cross-complaint in the California action brought pursuant to California law, it did not apply to determine the resolution of L.A. Pacific's counterclaims in the Nevada action that were decided in the arbitration on the basis of Nevada law. (See *Nally v. Grace Community Church, supra,* 47 Cal.3d at p. 302 [law of the case doctrine does not apply to points of law not determined in the prior appeal].) Although appellant attempts to analogize the circumstances here to those involving the application of the law of the case doctrine to a new action, the cases he cites relied on the well-established principle articulated in *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937] that "[d]ecisions of every division of the District Courts of Appeal are binding upon all the justice and municipal courts and upon all the superior courts of this state, and this is so whether or not the superior court is acting as a trial or appellate court." (See *Lascher v. State of California* (1966) 64 Cal.2d 687, 690 [51 Cal.Rptr. 270, 414 P.2d 398] [Cal. superior court bound by attorney fee award issued by Cal. appellate court]; *Estate of Miller* (1968) 259 Cal.App.2d 554, 559 [66 Cal.Rptr. 768] [same principle applied to a cost award].) Our prior decision did not operate as the law of the case with respect to claims asserted in Nevada under Nevada law. Thus, the arbitrators did not exceed their power by resolving those claims.

B. *Appellant Is Bound by the Arbitration Award.*

Appellant's final contention is that he cannot be held personally liable for the arbitration award because he never agreed to arbitrate. He asserts that his signature on the Agreement obligated only Hotels Nevada to arbitrate. We reject his contention. Though the record demonstrates that L.A. Pacific brought claims in arbitration against appellant personally and that he actively participated in the arbitration,[10] his liability was not based on his participation, but rather, on the finding that he was the alter ego of Hotels Nevada. That finding, alone, was sufficient to obligate him under the award.

The arbitration provision in the Agreement broadly defined an "Arbitrable Claim" as "each claim, dispute or controversy of whatever nature, arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement or the transactions contemplated hereby, including, without limitation, any contract, tort or statute, or the arbitrability of any claim . . . ." The Agreement did not restrict the power of the arbitrators to grant any remedy, providing only that the arbitration procedures should follow Nevada law. One of the claims arbitrated in connection with the remedies sought by L.A. Pacific was the issue of alter ego. The Nevada Supreme Court has explained that under Nevada law, "a nonsignatory 'may be bound to an arbitration agreement if so dictated by the "ordinary principles of contract and agency." ' Accordingly, various courts have adopted 'theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.' " (*Truck Ins. Exchange v. Palmer J. Swanson, Inc.* (2008) 124 Nev. 629, 634–635 [189 P.3d 656], fns. omitted.)

The requirements for a finding of alter ego are the same under Nevada or California law. In order to apply the alter ego doctrine and pierce the corporate veil: " '(1) The corporation must be influenced and governed by the person asserted to be its alter ego[;] (2) There must be such unity of interest and ownership that one is inseparable from the other; and (3) The facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice.' " (*Lorenz v. Beltio, Ltd.* (Nev. 1998) 114 Nev. 795, 807 [963 P.2d 488]; see *Roman Catholic Archbishop v. Superior Court* (1971) 15 Cal.App.3d 405, 411 [93 Cal.Rptr. 338] [requirements for applying alter ego doctrine are: " ' " '[I]t must be made to appear that the corporation is not only *influenced and*

---

[10] The record established that appellant stipulated the arbitrable claims included those brought against him personally as counterclaims in Nevada. By way of example, he participated in the arbitration by responding to discovery and signing verifications as a party, bringing the motion to dismiss L.A. Pacific's counterclaims and filing opening and closing briefs.

**359**

*governed* by that person [or other entity], but that there is such a *unity of interest and ownership* that the individuality, or separateness, of such person and corporation has ceased, and the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a *fraud or promote injustice*' " ' "].)

Applying Nevada law, the arbitrators concluded that Hotels Nevada was influenced and governed by appellant as if the companies' assets were his property, and that appellant disregarded the rights of the limited liability companies and their investors. Citing appellant's repeated testimony characterizing Hotels Nevada's funds as "my money," the arbitrators determined: "Plainly in the mind and actions of claimants' chief executive the unity of interest and ownership between them was complete and inseparable. Enormous damage was done to respondent in the names of claimants by their chief executive, 'such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice.' [Citation.]" In view of the arbitrators' findings, the judgment confirming the award specified that damages were awarded to L.A. Pacific against Hotels Nevada and appellant, jointly and severally. (See *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 301 [216 Cal.Rptr. 443, 702 P.2d 601] ["A judgment obtained against a corporation and its alter ego is enforceable against both separately."].)

Typically, we would review a trial court's finding as to whether a person or entity is the alter ego of a corporation under the substantial evidence standard.[11] (*Truck Ins. Exchange v. Palmer J. Swanson, Inc., supra,* 189 P.3d at p. 660; *Baize v. Eastridge Companies, LLC* (2006) 142 Cal.App.4th 293, 302 [47 Cal.Rptr.3d 763].) But our review of an arbitration award is different. "We do not review the merits of the dispute, the sufficiency of the evidence, or the arbitrator's reasoning, nor may we correct or review an award because of an arbitrator's legal or factual error, even if it appears on the award's face. Instead, we restrict our review to whether the award should be vacated under the grounds listed in [Code of Civil Procedure] section 1286.2. [Citations.]" (*Roehl v. Ritchie, supra,* 147 Cal.App.4th at p. 347.) Stated simply, we do not review the arbitrators' findings, "but take them as correct. [Citation.]" (*Ibid.*) Our review is therefore limited to the question of whether the arbitrators exceeded their powers by imposing liability against appellant as the alter ego of Hotels Nevada.

---

[11] In this regard, Nevada law departs from California law by allowing arbitration awards to be reviewed for substantial evidence; however, an award may not be vacated by reason of the arbitrator's misinterpretation of the law. (*Clark County Education Assn. v. Clark County School Dist.* (2006) 122 Nev. 337, 343–344 [131 P.3d 5].) Even if we were to engage in such review, we would conclude that the testimony identified by the arbitrators amply supported the alter ego finding.

Though presented as multiple arguments, appellant's claim as to why the arbitrators exceeded their authority is premised on the isolated contention that the arbitrators lacked authority to bind him to an alter ego finding absent his express agreement to arbitrate. Setting aside that Nevada law is directly to the contrary (see *Truck Ins. Exchange v. Palmer J. Swanson, Inc., supra*, 189 P.3d at pp. 660–661), the California authorities he cites do not support his claim. The first line of cases he cites involves an attorney's lack of authority to enter into a binding arbitration agreement. (E.g., *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 407–408 [212 Cal.Rptr. 151, 696 P.2d 645] [attorney lacked authority to bind client to arbitration agreement that client immediately repudiated upon learning of it]; *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1222 [101 Cal.Rptr.3d 97] [confirmation of arbitration award reversed where only attorney signed agreement to arbitrate, client did not agree to arbitrate and there was no indication client appeared at arbitration]; *Sanker v. Brown* (1985) 167 Cal.App.3d 1144, 1146–1147 [213 Cal.Rptr. 768] [denial of motion to vacate arbitration award reversed where attorney's undisputed declaration averred he mistakenly submitted to binding arbitration].) Another line of cases involves efforts to bind entities that neither consented to nor participated in arbitration proceedings. (See *Retail Clerks Union v. Thriftimart, Inc.* (1963) 59 Cal.2d 421, 425–427 [30 Cal.Rptr. 12, 380 P.2d 652] [arbitration award construing a collective bargaining contract could not bind wholly owned corporate subsidiary where subsidiary was not a party to the collective bargaining contract or the arbitration proceeding, did not have notice of or consent to the proceeding and was not found to be the alter ego of the parent corporation]; *Carpenters 46 Northern Cal. Counties Conf. Bd. v. Zweigle* (1982) 130 Cal.App.3d 337, 345–347 [181 Cal.Rptr. 805] [arbitration award enforceable against individual contractor and his corporation, but not against other corporations under which he operated that did not appear as parties to the arbitration]; *Southern Cal. Pipe Trades Dist. Council No. 16 v. Merritt* (1981) 126 Cal.App.3d 530, 539 [179 Cal.Rptr. 794] [judgment confirming an arbitration award reversed against an individual as an alter ego, where he was neither a party to the arbitration nor had notice that an award against him personally was being sought].) Finally, the court in *American Builder's Assn. v. Au-Yang* (1990) 226 Cal.App.3d 170, 178 [276 Cal.Rptr. 262], determined that the trial court—not the arbitrator—should have determined whether an undisclosed principal was entitled to prosecute an arbitration in the face of the defendant's objection to joining the entity as a party.

In contrast to these authorities, appellant has never contended that his attorneys lacked authority either to sign the Agreement or to represent him throughout the arbitration. He stipulated to add L.A. Pacific's Nevada counterclaims to the arbitration—claims which expressly included alter ego allegations. He further stipulated to participate in the arbitration and actively participated in the proceedings, both as an individual and on behalf of Hotels

Nevada. Illustrating his knowledge of his different roles, appellant more than once personally signed separate verifications to discovery responses, both as a party to the action and as the principal for Hotels Nevada. One of the key claims adjudicated throughout the arbitration was the allegation that appellant was the alter ego of Hotels Nevada. Under these circumstances, we find no basis to conclude that the arbitrators exceeded their authority by determining that appellant was the alter ego of Hotels Nevada and awarding damages against Hotels Nevada and appellant personally.

## DISPOSITION

The judgment is affirmed. L.A. Pacific is awarded its costs on appeal.

Ashmann-Gerst, J., and Chavez, J., concurred.

On February 17, 2012, the opinion was modified to read as printed above.