Filed 5/6/14  Williams v. Emergency Groups' Office CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RUSSELL WILLIAMS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>EMERGENCY GROUPS' OFFICE,<br><br>    Defendant and Respondent. | B246724<br><br>(Los Angeles County<br>Super. Ct. No. BC400347) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles F. Palmer, Judge.  Reversed.

Law Offices of Ron Bochner and Ron Bochner for Plaintiff and Appellant.

White & Case, Bryan A. Merryman, Earle Miller; Michelman & Robinson and Andrew H. Selesnick for Defendant and Respondent.

_____

Russell Williams (Williams) appeals the summary judgment entered in favor of respondent Emergency Groups' Office (EGO) on his claim for violation of the Rosenthal Fair Debt Collection Practices Act (the Act).

We reverse.

## FACTS

On December 30, 2004, Williams received medical services from Mission Viejo Emergency Medical Associates (Mission Viejo). On behalf of Mission Viejo, EGO sent Williams a bill for $281. Over the next couple of years, EGO sent Williams a plethora of statements. He sent EGO $5 a month even though EGO never agreed to piecemeal payment. In March 2007, the matter was referred to a collection agency. But before any collection activities took place, EGO removed the account from collection. Subsequently, it sent Williams monthly statements, the last of which was dated November 19, 2007.[1]

Williams filed a class action against EGO under the Act. He alleged, inter alia, that EGO acted unlawfully when it violated four provisions of the federal Fair Debt Collection Practices Act (FDCPA) that are incorporated into the Act (Civ. Code, § 1788.17).[2] Specifically, he alleged: (1) on its notices, EGO failed to state, "This is an attempt to collect a debt and any information obtained will be used for that purpose" (15 U.S.C. § 1692e(11)); (2) it used false, misleading or deceptive representations in connection with debt collection (15 U.S.C. § 1692e(2) & (10)); (3) instead of using its

---

[1]     The last statement was for $33.20. Presumably, Williams paid that amount soon after and his account was closed.

[2]     All further statutory references are to the Civil Code unless otherwise indicated. Section 1788.17 provides: "Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code. However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal. The references to federal codes in this section refer to those codes as they read January 1, 2001."

2

own name, it misrepresented itself as Mission Viejo or MVEP Medical Group (15 U.S.C. § 1692e(14); and (4) it used unfair or unconscionable means to collect or attempt to collect a debt (15 U.S.C. § 1692f). Certification of the class was denied, and we affirmed the trial court's decision in *Williams v. Emergency Groups' Office* (Mar. 28, 2012, B229211) [nonpub. opn.] (*Williams I*). EGO moved for summary judgment on the theory that the Act was inapplicable because the debt was not delinquent when EGO obtained it. The motion was granted, and judgment was entered about a month later.

This timely appeal followed.

## DISCUSSION

### I. Standard of Review.

We review summary judgment on an independent basis and decide whether there are triable issues of material fact. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348; Code Civ. Proc., § 437c, subd. (c).)

### II. The Law of the Case.

EGO contends that the outcome of this appeal is dictated by the law of the case set forth in *Williams I*. This contention lacks merit.

"'"The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal.'" [Citation.]' [Citation.] The law of the case may apply even where the appeal is from a decision short of a full trial, including a judgment on a demurrer, a nonsuit order or denial of an anti-SLAPP motion. [Citation.]" (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 356.)

According to EGO, *Williams I* "expressly adopted the definition of 'due or owing' articulated by the Attorney General in his 2002 opinion and held that '"the . . . Act applies to debts that have become delinquent, making them subject to collection." Obligations that are current rather than delinquent because the date for payment has yet to arrive "are not subject to the Act's requirements.'" [Citation.] The holding was

3

necessary to this Court's decision to affirm the trial court's order denying the motion for class certification, because it determined whether common questions would predominate among members of the putative class." Thus, EGO avers that *Williams I* is law of the case regarding the meaning of "debt."

No doubt EGO is correct, but that does not take EGO far because its next point is undeniably off the mark. It states that "[n]othing more is at issue on this appeal," suggesting the dispositive issue for us is the meaning of "debt" under the Act. But the trial court ruled that the Act was inapplicable because the debt was not delinquent when EGO obtained it. As we shall discuss, this pertains to the definition of a "debt collector." We did not reach this "debt collector" interpretation issue in *Williams I*. Indeed, in footnote 5, we indicated that it would have to be resolved in future proceedings. (*Williams I, supra,* B229211, at p. 14.)

## III. There is a Triable Issue as to Whether the Act Applies.

In deciding that the Act did not apply, the trial court essentially found that EGO did not operate as a debt collector with respect to Williams because his debt was not delinquent when EGO obtained it. Per our explication below, there is a problem with the trial court's ruling.

A debt collector "means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." (§ 1788.2, subd. (c).) This statute does not create an exception to the definition of debt collector based on when a debt was obtained. Thus, the trial court erred by imposing an exception that does not exist in the Act.

EGO contends that we should apply the definition of debt collector in the FDCPA.[3] Under title 15 United States Code sections 1692a(6)(F), the term "debt

---

[3] EGO couches its FDCPA argument this way: "If the federal act's definition of 'debt collector' applies, it is apparent that EGO is not covered[.]" It acknowledges that the Act does not have an exclusion that corresponds to title 15 United States Code section 1692a(6)(F), "so the definition of 'debt collector' under the state Act is broader, as [federal cases] observe." This leads EGO to state: "Even if the [Act's] definition of 'debt collector' applies in this case, . . . that does not end the analysis" because the Act is

4

collector" does not pertain to "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person[.]" The flaw in this argument is that the Act does not incorporate the FDCPA's definition of a debt collector or any of its exceptions to the definition. Thus, we decline to rewrite the Act in the manner suggested by EGO. (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253 ["We may not rewrite the statute to conform to an assumed intention that does not appear in its language"].)

## IV. Other Issues.

EGO suggests that we can affirm summary judgment on the following grounds not decided by the trial court: (1) Williams's debt was not delinquent when EGO communicated with him; and (2) even if EGO was a debt collector, the law permits it to communicate in the name of its principal.

The "debt was not delinquent at the time of communication" issue was the sole grounds cited for summary judgment in EGO's notice of motion. However, in its memorandum of points and authorities, EGO did not develop this issue. Rather, it argued a wholly different issue, which was whether the Act applied because the debt was not delinquent at the time that EGO obtained it. In its separate statement, EGO included the following statement: "At the time EGO, acting on behalf of MVEMA, sent [Williams] a bill for payments due on April 8, 2005, the debt was not in default and not subject to immediate collection activities." In addition, the separate statement indicated that Williams's account was in default on March 12, 2007, at which time the account was sent to a collection agency. On March 23, 2007, the account was removed from collection when Williams agreed to "make payments exceeding $5 per month on his account." There is no statement in the separate statement that EGO ceased all communication with Williams after his debt was delinquent.

---

only triggered when a debt collector attempts to collect a debt that is delinquent. In EGO's view, the debt was never delinquent, so the Act does not apply.

5

In connection with the motion for summary judgment, EGO submitted a "Selected Family/Patient Report" indicating that EGO spoke to Williams's wife on March 21, 2007, and she agreed to pay more than $5 every month; EGO sent a demand statement on April 18, 2007, for $149.40; additional statements were sent by EGO in May, June, July, August, September and October 2007;  EGO sent the last statement on November 19, 2007, and it was for $33.20.

We cannot affirm summary judgment on the grounds that Williams's debt was not delinquent when EGO communicated with him.  There is a triable issue because EGO conceded that it communicated with Williams on March 23, 2007, which was after the account was in default on March 12, 2007, and EGO's own evidence shows that it sent Williams statements through November 19, 2007.  The fact that the account had not been paid for over two years and EGO considered it in default on March 12, 2007, gives rise to a reasonably deducible inference that the debt was delinquent on that date and qualified as a debt under the Act.  Thus, there is a triable issue as to whether EGO communicated with Williams after the debt was delinquent.

Whether EGO is permitted to communicate in the name of its principal is moot. That issue pertains to a single cause of action and therefore does not support summary judgment on all causes of action.

**DISPOSITION**

The judgment is reversed.

Williams is entitled to his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
                ASHMANN-GERST

We concur:

_____, P. J.
       BOREN

_____, J.
       CHAVEZ