Filed 5/19/22  Griffin v. Stowe CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DAELANI GRIFFIN, | |
| Plaintiff and Appellant, | E076973 |
| v. | (Super.Ct.No. CVMV2100078) |
| JULIAN NOEL STOWE, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Mark E. Johnson, Judge.

Affirmed.

Daelani Griffin, in pro. per., for Plaintiff and Appellant.

Julian Noel Stowe, in pro. per., for Defendant and Respondent.

Daelani Griffin filed a petition for a harassment restraining order against Julian

Noel Stone.[1]  She claimed Stowe made threatening and insulting social media posts about

her and induced others to do so.  The trial court denied the petition.  It commented,

---

[1]    Despite her traditionally male name, Stowe is female.

among other things, "This stuff . . . doesn't even come close to the kind of harassment that's required for a civil restraining order. You guys . . . have a spat on Facebook. . . . Just block them and move on. . . ."

Griffin appeals. She contends that the trial court "was not acting as a neutral based on the law." She also claims that Stowe's conduct was civilly and criminally unlawful.

We will hold that the trial court could properly find that Griffin had not proven the alleged harassment by clear and convincing evidence. The trial court's comments were proper; they show that it ruled based on the appropriate legal standard. Griffin has not shown that Stowe committed any crime or civil wrong, and moreover has not shown that if she did, that would necessarily constitute harassment. Accordingly, we will affirm.

I

STATEMENT OF FACTS

A.      *The Allegations of the Petition*.

According to Griffin's sworn petition, Stowe lived in the State of Washington. They met in second grade but had not seen each other for 13 years.

According to Griffin, Stowe used her name and likeness in "online rants that [we]re false." Stowe sent her harassing messages and had "other ladies whom I do not know" send her harassing messages. Stowe had sent her a video saying that Griffin had "a mental illness." Stowe had described Griffin as "a sugar baby, a prostitute, and a

2

cheap hooker." Stowe had threatened to have Griffin deported[2] and to "find [her] in California and beat the shit out of [her]."

Griffin would block Stowe, but Stowe would just open new accounts.

B.      *Attachments to the Petition*.

Screenshots attached to the petition  showed that Stowe had multiple online accounts.  The posts from her shown in the attachment were innocuous and seemingly not related to Griffin at all.  Griffin claimed that one post by Stowe, showing only the top of someone's head, was from a "[v]ideo of me talking about [an] unnamed person."  Another post said, "I wasn't attacking you unlike you were.  Being crazy towards me and my family.  Good try though."

One post was by one Hana Knowlton.  Griffin identified Knowlton as a "[r]andom associated friend to Julian."  It said:  "You've got some balls speaking on Rylee and Julian.  There 10x the woman you'll ever be.  You're a joke.  Don't come crying when your lifestyle doesn't work.  Because Rylee and Julian have better jobs than you.  You're petty and worthless.  And the reason covid19 will be here a month from now.  Stay home.  And maybe learn how to do your makeup and not look like a 12 year old trying to damn hard. . . .  Take your wanna be jordon woods[3] looking ass out of here and leave them alone.  You had no right to speak on anything.  You're scum."

---

**2**      Griffin now claims that Stowe threatened to have her deported "to Africa," which was "racially inflammatory."  The record does not show this.

**3**      Apparently referring to reality TV personality Jordyn Woods.

Another post was by one Lysa Cole. Griffin labeled Cole a "friend or random account associated with Julian." It said, "Bruh you need to chill out and stop harassing people. It's absolutely ridiculous and childish. . . . Find someone else to do with your time. Like working on your closure or take pics that don't look like your being hurt."

C.  *Hearing on the Petition.*

Both Griffin and Stowe appeared and testified at the hearing.

Griffin said she watched the videos that Stowe sent her "because my name was tagged in them." However, there was at least one that she "didn't really watch . . . ." She did not have screenshots of all of the offensive posts because she "started documenting late . . . ." The last contact she had had with Stowe was in December 2020. Griffin admitted that she was an American citizen and could not actually be deported.

Stowe said she started messaging Griffin in February 2020, to "reach out to [an] old friend[] from elementary school." She had had no contact with her since October or November 2020.

D.  *Other Evidence*.

Griffin offers us a YouTube link, supposedly to "online rants." We cannot consider any evidence that was not presented to the trial court. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)

4

## II

## STATEMENT OF THE CASE

In February 2021, Griffin filed a petition for temporary and permanent harassment restraining orders against Stowe. The trial court denied a temporary restraining order. Stowe filed a response (not in our record).

In March 2021, after a hearing, the trial court denied a restraining order. It commented: "[L]et me tell you the kind of stuff that gets heard down here. . . . I had a young lady who says she was sexually assaulted, and requesting an order. This stuff . . . doesn't even come close to the kind of harassment that's required for a civil restraining order. You guys . . . have a spat on Facebook. . . . Nobody cares about these s[p]ats. Just block them and move on. . . . If I put restraining orders on people, I'm giving them orders to do things — or not to do things that they, otherwise, are legally allowed to do. They lose their rights to possess firearms. For me, that's a big deal. They have to stay away from areas. It goes on their FBI record. So every time a police officer pulls them over to stop, and if they run a rap sheet they see a restraining order, it will change the whole nature of the contact. But I can tell you, a restraining order requires unlawful harassment. A lot more than I'm seeing here. So the Court is going to deny the request for a restraining order."

III

DISCUSSION

A.      *Forfeiture*.

Griffin has forfeited all of her contentions by failing to have Stowe's response to the petition included in the appellate record.

"'It is the duty of an appellant to provide an adequate record to the court establishing error.  Failure to provide an adequate record on an issue requires that the issue be resolved against appellant.  [Citation.]'  [Citation.]  This principle stems from the well-established rule of appellate review that a judgment or order is presumed correct and the appellant has the burden of demonstrating prejudicial error.  [Citations.]  By failing to provide an adequate record, appellant cannot meet his burden to show error and we must resolve any challenge to the order against him.  [Citation.]" (*Hotels Nevada v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.)

Here, for all we know, Stowe presented evidence proving that the alleged harassment never occurred.  On this record, Griffin cannot show otherwise.  Hence, she cannot carry her burden.  We will also discuss Griffin's contentions on the merits, but only as an alternative ground for rejecting them.

B.      *The Sufficiency of the Evidence*.

Griffin does not contend, in so many words, that there was insufficient evidence to support the denial of her petition.  However, she does claim that "[t]he judge ignored the facts"; she asks us "to re-evaluate the [j]udge[']s decision" and to order the trial court to

issue the requested injunction.  The first question, then, is what the facts actually were.  Legally, they were whatever the trial court could reasonably find them to be, if that finding was based on substantial evidence and would tend to support the denial.

Code of Civil Procedure section 527.6 (section 527.6) allows "[a] person who has suffered harassment" to seek "an order after hearing prohibiting harassment . . . ." (§ 527.6, subd. (a).)

"Harassment" includes "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the plaintiff."  (§ 527.6, subd. (b).)

A "course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose . . . ." (§ 527.6, subd. (b)(1).)

"At the hearing, . . . [i]f the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment."  (§ 527.6, subd. (i).)

"[A]ppellate review of the sufficiency of the evidence in support of a finding requiring clear and convincing proof must account for the level of confidence this standard demands. . . .  [T]he question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have

7

found it highly probable that the fact was true. Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.)

Moreover, "'[w]hen the trier of fact has expressly or implicitly concluded that the party with the burden of proof failed to carry that burden and that party appeals, it is somewhat misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.' [Citation.] 'Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citations.]" (*LaFace v. Ralphs Grocery Company* (2022) 75 Cal.App.5th 388, 409-410, pet for rev. filed Apr. 1, 2022.)

The trial court did not have to believe the allegations in Griffin's petition, even though they were made under penalty of perjury. "[I]n a bench trial, the trial court is the 'sole judge' of witness credibility. [Citation.] The trial judge may believe or disbelieve uncontradicted witnesses if there is any rational ground for doing so. [Citation.] The fact

8

finder's determination of the veracity of a witness is final. [Citation.]" (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) Griffin had no *documentary* evidence that Stowe actually said she had a mental illness, called her a prostitute, threatened to have her deported, or threatened to beat her. The fact that Griffin did introduce some posts by Stowe, but those posts were completely inoffensive, tended to show that Griffin was not credible. Perhaps the trial court could have believed her, even in the absence of documentary evidence, but it did not have to.

Separately and alternatively, the trial court could find that Stowe did make these statements, but they would not cause a *reasonable* person to suffer *substantial* emotional distress. People say "You're crazy" all the time, to express disagreement; saying this need not cause substantial emotional distress. Being called a "prostitute" or "a cheap hooker" is no fun, but it is not hard to shake off the insult when it is not true. The threat to have Griffin deported was not necessarily distressing at all, as she was an American citizen. And finally, as Stowe was in Washington and Griffin was in California, the threat to "beat the shit out of [her]" would not necessarily cause substantial emotional distress.

There was no evidence of the period of time over which these alleged statements were supposedly made. If they were made all at once — or even, in a fit of pique, over a few days — they would not necessarily cause a reasonable person to suffer substantial emotional distress. There also was no evidence of what led Stowe to verbally abuse Griffin. If Griffin wronged Stowe somehow, it might not be unreasonable for Stowe to

9

call her mentally ill and a prostitute and to threaten to beat her — all metaphorically — and Griffin would be aware of that.

Aside from Griffin's allegation, there was no evidence that Stowe *caused* Knowlton and Cole to send their respective messages. Griffin did not explain how she knew that Stowe did; thus, the trial court could reasonably disbelieve her. In any event, as far as the record shows, these posts were one-off events that a reasonable person could put behind him or her. Cole's post was not even particularly insulting — it merely said Griffin was "ridiculous and childish" and looked "hurt" in photos.

As the trial court observed, it appeared that Griffin could just choose not to view the offensive posts. She admitted that there was at least one video that she did not watch. She did claim that, when she blocked Stowe, Stowe would just open up a new account. Even so, the accounts shown in the attachment to the petition all had "Julian" in the name and featured Stowe's photo. Thus, Griffin could easily avoid viewing them. She did not claim that anyone else whom she knew ever saw the posts.

Finally, there was no evidence that the alleged harassment was likely to continue. "An injunction is authorized only when it appears that wrongful acts are likely to recur. [Citation.]" (*Russell v. Douvan* (2003) 112 Cal.App.4th 399, 402.) Again, there was no evidence of how long the alleged harassment went on. Griffin admitted that, at the time of the hearing, she had not heard from Stowe for three or four months; Stowe claimed it had been more like four or five months. And again, the posts by Knowlton and Cole were apparently one-offs.

10

In sum, Griffin's evidence of purported harassment was not "uncontradicted and unimpeached"; it left ample "room for a judicial determination that it was insufficient to support a finding," particularly under the "clear and convincing" standard of proof.

For these reasons, the trial court could properly deny the petition.

### C.     *Judicial Bias*.

Griffin argues that the trial court erred by taking into consideration the effect of a protective order on a defendant.  Taking its remarks as a whole, however, clearly that was not a determinative consideration.  Rather, it used the effect of a protective order on a defendant — e.g., loss of the right to possess firearms, loss of the right to be in certain areas, and a criminal record — to explain to Griffin why the standard for granting a restraining order is as high as it is.  It concluded that it was deciding the case under the correct legal standard:  "[A] restraining order requires unlawful harassment.  A lot more than I'm seeing here."

Griffin also complains that these remarks show "personal bias."  She forfeited any claim of judicial bias by failing to bring a disqualification motion below.  (Code Civ. Proc., § 170.3, subd. (c)(1); *People v. Guerra* (2006) 37 Cal.4th 1067, 1110-1111, disapproved on unrelated grounds in *People v. Rundle* (2008) 43 Cal.4th 76, 151; see also *Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1339.)

She additionally forfeited any such claim by failing to file a prompt writ petition. An appellate court can review a claim of judicial bias only by writ, not by appeal.  (Code

11

Civ. Proc., § 170.3, subd. (d); *People v. Lucas* (2014) 60 Cal.4th 153, 304, disapproved on unrelated grounds in *People v. Romero and Self* (2015) 62 Cal.4th 1, 53, fn. 19.)

We hasten to add that she has not shown so much as a hint of bias. As already discussed, the trial court's ruling was legally correct; Griffin merely felt that it slighted her concerns. In any event, "'a trial court's . . . rulings against a party — even when erroneous — do not establish a charge of judicial bias, especially when they are subject to review.' [Citation.]" (*People v. Farley* (2009) 46 Cal.4th 1053, 1110.)

D.      *Illegality*.

Griffin argues that Stowe's conduct was criminal, because it constituted stalking (Pen. Code, § 646.9), repeated electronic communication with the intent to harass (Pen. Code, § 653m, subd. (b)), posting personal identifying information for the purposes of causing harassment by a third party (Pen. Code, § 653.2, subd. (a)), and making a criminal threat (Pen. Code, § 422). She also argues that Stowe's conduct was civilly actionable as false-light invasion of privacy, defamation, and — because it caused her to suffer anxiety — under the Americans with Disabilities Act.

She does not lay out the elements of any of these crimes and causes of action; she does not explain how Stowe's conduct satisfied those elements. "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) We deem the contention forfeited.

12

Griffin also does not explain why a crime or civil wrong is necessarily "harassment" as defined in section 527.6. For example, a couple of instances of defamation would not necessarily constitute a "course of conduct."

In any event, as already discussed, the trial court could reasonably find that Stowe did not *actually* say Griffin had a mental illness, call her a prostitute, threaten to have her deported, or threaten to beat her. On that view of the evidence, there was no crime and no civil wrong.

IV

DISPOSITION

The order denying the petition is affirmed. In the interest of justice, we do not award costs to either side.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

SLOUGH
J.

FIELDS
J.

13