Filed 6/9/26  In re R.S. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re R.S., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>T.T.,<br><br>        Defendant and Appellant. | A174266<br><br>(Alameda County Super. Ct. No. JD-032615-03) |

T.T. (mother) appeals from the juvenile court's order terminating her parental rights as to her son R.S. on a single basis:  She contends that the Alameda County Social Services Agency (the Agency) failed to sufficiently inquire whether R.S. might be an Indian child in violation of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.), California Indian Child Welfare Act (Cal-ICWA; Welf. & Inst. Code,[1] § 224 et seq.), and *In re Dezi C.* (2024) 16 Cal.5th 1112 (*Dezi C.*), thus, a conditional reversal is required.[2]

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

[2] Because both federal and state law use the term "Indian," we do as well; we intend no disrespect.

1

We agree in part.  Because the record does not show that the Agency interviewed paternal family members known and " 'reasonably available' " to the Agency to ascertain R.S.'s possible Indian ancestry, insubstantial evidence supports the juvenile court's finding that ICWA and Cal-ICWA did not apply.  (See *Dezi C.*, *supra*, 16 Cal.5th at pp. 1137, 1140.)  Accordingly, we conditionally reverse the juvenile court's finding and remand for the limited purpose of complying with the inquiry provisions of ICWA and Cal-ICWA. (*Dezi C.*, at p. 1137.)  In all other respects, we affirm the judgment.

### BACKGROUND[3]

Prior to the referral, mother and father had been unhoused and "staying in shelters" or "living in a tent behind the Hayward Plunge" with then three-year-old R.S. (born 2017).  On or about July 22, 2020, mother, father, and R.S. were staying at a hotel where mother was observed punching father in front of R.S.  Five days later, on July 27, father committed suicide by hanging himself in the family's hotel room while R.S. was present.  R.S. was subsequently discovered by hotel staff walking in the hallway.  Mother's whereabouts at the time of R.S.'s discovery were initially unknown, but it was later determined that she was in jail for "trespassing and being violent towards staff at the hotel and Abode Services."[4]  R.S. was delivered into protective custody and placed in a licensed foster home.

On July 29, the Agency filed a petition against mother alleging R.S. fell within the jurisdiction of the juvenile court under section 300, subdivisions

---

[3] Because the appeal does not challenge the legal basis for the juvenile court's termination of parental rights, our background summary is limited to the Agency's inquiry into R.S.'s potential ICWA eligibility.

[4] Though not specifically detailed in the record, Abode Services appears to be a housing program that was assisting mother prior to the filing of the petition.

(b)(1), (g), and (j).[5]  More specifically, as to her failure to protect under section 300, subdivision (b)(1), the petition alleged that mother engaged in violence against father, was unable to provide adequate shelter to R.S. because she was "exited from the housing program at Abode Services due to violent behaviors towards staff, breaking program rules, and not abiding by the curfew," and was unable to provide care to R.S. due to her history of mental health concerns.  As for section 300, subdivision (g), the petition alleged mother is unable to provide care or support for R.S. because "her whereabouts are unknown" and the father is deceased.  Regarding the abuse of a sibling under section 300, subdivision (j), the petition alleged R.S. has an older half sibling N.H. (born 2012), who was the child of mother and a different father and was a previous dependent of the court who had been removed from the home due to mother's unstable housing, failure to provide adequate care, and history of substance use and mental health concerns.[6]  The petition stated that an inquiry into R.S.'s potential Indian tribe membership or eligibility had not yet been completed.

The Agency's July 30, 2020, detention report recommended that R.S. be detained and stated ICWA "does or may apply."  On July 28, a child welfare worker attempted to make contact with mother and the father of N.H. to inquire about Indian ancestry, but neither was available.  The child welfare worker spoke with maternal grandmother who advised that N.H. lives out of

---

[5] Father was listed as deceased and is not a subject of this appeal.

[6] Mother received family reunification services for N.H. from March 2016 to May 2017 and family maintenance services from May 2017 to July 2018.  N.H. began living in Washington State with his paternal great-grandmother in 2020 after mother called her and stated "she 'needed a break.'"

state with his paternal great-grandmother; the report does not indicate if the worker asked maternal grandmother about R.S.'s Indian ancestry.

The next ICWA reference is in the Agency's August 2020 jurisdiction and disposition report that again states, "The Indian Child Welfare Act does or may apply," but asked the court to "make an ICWA finding." According to the report, in 2015, mother had denied Indian ancestry in the dependency case concerning N.H., so the juvenile court had then determined that ICWA did not apply. The report detailed the child welfare worker's contact with R.S.'s paternal uncle and maternal grandmother concerning an "Initial Case Planning Child and Family Team" meeting ultimately attended by mother, R.S.'s caregivers, R.S.'s godmother, and paternal uncle.[7] The worker also spoke with the paternal great-grandmother of R.S.'s half sibling N.H. and detailed a conversation with mother, in which she reported that R.S.'s paternal grandmother was traveling from Mexico for father's funeral and paternal aunt (Kenya) was helping with the funeral arrangements. The record is silent as to whether the child welfare worker contacted these paternal relatives or if any of the other communications with family members included an ICWA inquiry. Ultimately, the jurisdiction and disposition hearing appears to have been continued without any ICWA-related findings.[8]

The September and December 2020 addendum reports prepared in advance of the next hearing dates repeated the request that the juvenile court find R.S. is not an Indian Child and represented that no further notice

---

[7] Paternal uncle had been being considered as a potential placement for R.S. until he told the child welfare worker that his housing situation precluded the placement.

[8] The minute order for the August 20, 2020 jurisdiction and disposition hearing and the reporter's transcripts for the August 20, September 10, and December 7, 2020 hearings are not included in the appellate record.

4

is required under ICWA because mother "completed and submitted a ICWA20 Parental Notification of Indian Status form on April 26, 2017 [in connection with N.H.'s dependency case], which indicated that there is no Indian ancestry."

The court held a contested jurisdiction and disposition hearing on December 7, 2020, and January 7, 2021, after which it found the allegations of the petition true, ordered R.S. removed from mother's physical custody, and granted reunification services. The court did not make an ICWA determination.

In October 2021, the Agency filed a status review report requesting the court find that ICWA did not apply to R.S. The report represented that on July 6, 2021, R.S.'s paternal aunt (Sonya) informed the agency that she did not have Indian ancestry. The Agency also reported that R.S. had visited with his maternal grandmother and adult brother (who, like N.H., shared the same mother as R.S. but seemingly had a different father) but did not detail any additional inquiry concerning R.S.'s potential Indian ancestry. The juvenile court continued the matter for six months for a dependency status review hearing without making an ICWA finding.[9]

The Agency's April 2022 status review report did not detail any additional ICWA inquiries and again requested the juvenile court make an ICWA finding. At the family maintenance review hearing held on April 12, 2022, the juvenile court found that ICWA did not apply and extended family maintenance services.[10]

---

[9] The record on appeal does not specify the reason for the absence of an ICWA finding.

[10] The reporter's transcript for the April 12, 2022 hearing is not included in the appellate record. Subsequent status review reports incorrectly state that the court did not determine ICWA did not apply until

5

On June 16, 2022, the Agency held another child and family team meeting with mother, various service providers, and a paternal cousin who agreed to be part of R.S.'s "Safety Network," but the record does not detail cousin's familial connection or indicate any further ICWA inquiry.

On December 12, the Agency filed a second section 387 supplemental petition for R.S. after mother experienced a mental health episode, rendering her unable to provide for him. Prior to the April 18, 2023 contested jurisdiction and disposition hearing for the supplemental petition, the Agency submitted a jurisdiction report, disposition report, and addendum report that included a note that mother "stated on November 19, 2015, and on May 9, 2022 that her family has no Native American ancestry." According to the report, the child welfare worker had telephoned paternal cousin and a paternal great-aunt to explore placement for R.S., but they declined; the record does not indicate if the worker asked either relative about possible Indian ancestry.[11]

The Agency filed a section 366.26 Welfare and Institutions report in advance of the section 366.26 hearing, which stated mother previously denied Indian ancestry, the prior court had made a finding ICWA did not apply in N.H.'s case, and paternal aunt (Sonya) had denied Indian ancestry; the report also noted the juvenile court had previously determined ICWA did not apply to R.S. in connection with the earlier petition. On August 21, 2025, the court

July 12, 2022, rather than April 12, likely because the minute order for both hearing dates reflects findings that "the minor is not a minor to whom ICWA applies, and no further notice is required."

[11] The "visitation schedule" included within the January 19, 2023 case plan states visitation with "paternal grandmother can be arranged by the caregivers." It is unclear if this "paternal" reference is a typographical error and should have read "*maternal* grandmother" because, as previously noted, paternal grandmother lived in Mexico and visited only for father's funeral.

held a section 366.26 hearing in which it found by clear and convincing evidence that it is likely R.S. would be adopted; the court terminated the parental rights of mother, deceased father, and any unknown father. The juvenile court again found ICWA did not apply and "no further [ICWA] notice is required based upon the information in the [A]gency's report."

Mother timely appeals.

## DISCUSSION

Mother does not challenge the merits of the juvenile court's rulings terminating her parental rights. Mother solely argues that, under section 224.2, subdivisions (b)(2) and (c) and *Dezi C.*, which was decided after the 2022 orders made in this case, the Agency failed to satisfy its "initial inquiry efforts" whether R.S. might be an Indian child; therefore, the juvenile court's finding that ICWA did not apply is not supported by substantial evidence and requires a conditional reversal. Because the record does not show that the Agency asked R.S.'s known and reasonably available paternal relatives about R.S.'s potential Indian heritage, we agree.

## I. *Legal Framework*

ICWA and Cal-ICWA "are intended to protect Native American heritage, cultural connections between tribes and children of Native American ancestry, the best interests of Indian children, and the stability and security of Indian tribes and families." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1125.) Under these laws, "courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases." (*Ibid.*, quoting § 224.2, subd. (a).) "An 'Indian child' is defined as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a

7

member of an Indian tribe.' (25 U.S.C. § 1903(4).)" (*Dezi C.*, at p. 1129.) When ICWA applies, " 'the Indian child's tribe shall have a right to intervene' " in a dependency proceeding "involving the removal of an Indian child from their family." (*Dezi C.*, at p. 1129.)

"ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*).) Section 224.2 subjects California agencies and courts to an expanded version of the federal duty of inquiry. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1131.) As relevant here, "section 224.2 creates three distinct duties regarding ICWA in dependency proceedings." (*D.S.*, at p. 1052.) After a child welfare agency's initial contact with the minor and his or her family, "the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates 'reason to believe' the child is an Indian child, then the Agency 'shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), [italics omitted].) Third, if that further inquiry results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*D.S.*, at p. 1052, italics omitted.)

This appeal concerns the adequacy of the Agency's "initial" ICWA inquiry upon its first contact with the family and R.S.'s placement into temporary custody. (But see *Dezi C.*, *supra*, 16 Cal.5th at p. 1132 [noting the term duty of "initial" inquiry "is a bit of a misnomer, as the duty 'continues throughout the dependency proceedings' "].) That inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the

8

party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b)(2).) For these purposes, Cal-ICWA incorporates ICWA's definition of an "extended family member" as a "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c)(1).) The initial inquiry mandated by section 224.2, subdivision (b) " 'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries. The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.' " (*Dezi C.*, at p. 1140.)

"We generally review the juvenile court's factual finding that ICWA does not apply for substantial evidence." (*In re C.R.* (2025) 112 Cal.App.5th 793, 800 (*C.R.*), citing § 224.2, subd. (i)(2) [juvenile court's finding that ICWA does not apply to the proceedings is "subject to reversal based on sufficiency of the evidence"].) In *Dezi C.*, *supra*, 16 Cal.5th at page 1134, the California Supreme Court declined to decide the "standard of review" applicable to a juvenile court's finding that "ICWA does not apply," but explained that "the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id.* at p. 1141; see *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101 [" 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case' "].)

9

When reviewing that finding, the threshold issue is whether the agency conducted a proper and adequate inquiry into the child's Indian ancestry because, absent such an inquiry, "it is impossible to ascertain whether the agency's error is prejudicial." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1136.) As a result, any "error resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with [California Rules of Court,] rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Ibid.* [" '[U]ntil an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal' "].)

## II. *Substantial Evidence Does Not Support the Juvenile Court's Finding ICWA Did Not Apply*

Mother contends substantial evidence does not support the juvenile court's finding that ICWA and Cal-ICWA did not apply to R.S. because the Agency's inquiry into the minor's potential Indian ancestry was inadequate under section 224.2, subdivisions (b)(2) and (c). She asserts that she was not questioned about her potential Indian ancestry at her first appearance in court[12] or at any time in the current case, and "this failure alone—not

---

[12] Section 224.2, subdivision (c) provides that at the first hearing on a petition, "the court shall ask each party to the proceeding and all other interested persons present whether the child is, or may be, an Indian child . . . . Inquiry shall also be made at the first appearance in court of each party or interested person who was not present at the first hearing on the petition." But, because mother did not include in the appellate record the reporter's transcript of her initial appearance, we are unable to determine any error; the argument is therefore forfeited. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348 [" 'It is the duty of an appellant to provide an adequate record to the court establishing error. Failure to provide an adequate record on an issue requires that the issue be resolved against appellant' "].) Regardless, because we remand, we need not

10

inquiring of *the parent*—constitutes reversible error."  Mother represents that she identified known relatives to the Agency who were not asked about their Indian heritage and thus, the record demonstrates that the Agency failed to conduct the investigation required.  (Citing *In re Claudia R.* (2025) 115 Cal.App.5th 76 (*Claudia R.*).)  Specifically, mother identifies seven extended family members who were "known or available" for interview including maternal grandmother, R.S.'s adult sibling, paternal grandmother, a second paternal aunt (Kenya), paternal uncle, paternal cousin, and paternal great-aunt.  She further asserts the Agency should have made an effort to identify and contact other extended family members including paternal grandfather, paternal grandmother, maternal grandfather, and mother's siblings.  Mother contends that this inadequate inquiry constitutes prejudicial error under *Dezi C.* requiring a conditional remand.

The Agency counters, arguing the juvenile court's ICWA determination is supported by substantial evidence because mother denied Indian ancestry multiple times between November 2015 and May 2022; the Agency's inquiry was otherwise adequate because of the quality of the information received.  The Agency highlights the Courts of Appeal's differing interpretations after *Dezi C.* as to "whether *every* 'reasonably available' extended family member must be interviewed as part of an agency's duty."  (Citing *In re C.L.* (2025) 116 Cal.App.5th 53, 69 [the agency's inquiries of "all available extended family members in the older generations" was sufficient despite a failure to inquire of maternal uncle where maternal uncle was demonstrated to be reasonably available]; *C.R.*, *supra*, 112 Cal.App.5th at p. 802 ["The court also reasonably could find mother's sister (maternal aunt) would not have had any

_____

specifically discuss the adequacy of any ICWA inquiry conducted at the first hearing on the petition.

11

more information about the family's potential Indian ancestry than their own mother (maternal grandmother) had"]; compare *Claudia R.*, *supra*, 115 Cal.App.5th at pp. 90–91 [concluding court may not find inquiry adequate if agency did not interview all reasonably available extended family members]; but see *In re K.G.* (2025) 117 Cal.App.5th 379, 385, 381 [disagreeing with *Claudia R.* and holding, "It is not mandatory for the Department always to 'inquire of everyone who has an interest in the child'" because it "placed additional burdens on the Department"].)

The Agency asserts that the "better view" is for the court to "focus on whether an inquiry 'yielded reliable information about a child's possible tribal affiliation,' not 'on the number of individuals interviewed.'" (Citing *Dezi C.*, *supra*, 16 Cal.5th at pp. 1153, 1169 (dis. opn. of Groban, J.).) Here, we need not decide this appellate split because *Dezi C.* made clear that the Agency has a duty to ask "'those people who are *reasonably available to help the agency with its investigation* into whether the child has any potential Indian ancestry.'" (*Id.* at p. 1140, italics added.) Because the record does not demonstrate that level of contact for the paternal side of R.S.'s family, a conditional reversal is required. (*Ibid.*)

The record before us shows that the Agency spoke with mother[13] and a paternal aunt (Sonya) who both reported that R.S. had no known Indian

---

[13] As stated, Mother complains that "it does not appear that [she] was *ever* questioned about her potential Indian ancestry in the *current* case." She claims her purported statement included in the January 2023 disposition report that "her family has no Native American ancestry," "appears to be an error, as counsel cannot locate another reference to this May 2022 denial in any other reports." Although section 224.2, subdivisions (b) and (c) and *Dezi C.* direct an investigating agency to directly question the available parents about Indian ancestry far earlier than appears to have been done in this case, the delay in questioning mother is not determinative here because of the prior ICWA determination in the proceedings concerning her older

12

ancestry and also relied on the juvenile court's earlier ICWA determination in N.H.'s case in recommending the juvenile court find that ICWA did not apply.

Consideration of the juvenile court's determination of the absence of Indian ancestry in N.H.'s earlier case was appropriate. (See, e.g., *In re Charles W.* (2021) 66 Cal.App.5th 483, 490 [concluding that substantial evidence supported the court's finding that ICWA did not apply, including evidence that "the court reasonably relied on a prior [ICWA] finding involving the same family"].) Thus, the record's silence regarding additional inquiries of maternal grandmother does not render the Agency's investigation inadequate. (See *C.R., supra,* 112 Cal.App.5th at p. 802 [prior finding that ICWA did not apply to mother meant there was "no reason to duplicate inquiry efforts as to mother's side of the family" where maternal grandmother previously denied Indian ancestry].) Similarly, the record's silence as to any potential inquiry of R.S.'s adult brother is insignificant as, like N.H., adult brother did not share a father with R.S. (*In re Charles W.*, at p. 490.)

But because N.H. and R.S. had different fathers, the ICWA determination in N.H.'s matter cannot alone demonstrate sufficient investigation into a potential *paternal* source of Indian ancestry for R.S. The Agency's only inquiry of a paternal relative appears to have been the interview with one paternal aunt (Sonya), despite communications with or knowledge of a second paternal aunt (Kenya), paternal grandmother, paternal uncle, paternal cousin, and paternal great-aunt.[14] (*Dezi C., supra,*

_____

child N.H. and because of our conclusions concerning the inadequacy of the paternal inquiry, as we discuss below.

[14] We note that the record's silence as to any potential inquiry of paternal great-aunt is irrelevant because it was not required by the statute. (*In re J.F.* (2025) 109 Cal.App.5th 468, 471 ["A great-aunt is not 'an extended

13

16 Cal.5th at p. 1140.) At the time of the initial investigation, paternal uncle and cousin seem to have been " 'reasonably available,' " yet the record does not reflect if, when substantively discussing R.S.'s dependency proceedings, the Agency completed the "rather simple task to ask those family members about Indian ancestry." (*Id.* at pp. 1140, 1143; see *In re H.B.* (2023) 92 Cal.App.5th 711, 720, quoting *In re S.S.* (2023) 90 Cal.App.5th 694, 704–705 [the extended family member inquiry is "intended to ensure social workers 'ask an added question of extended family members whom [they] often already are investigating in their usual course of work' "].) Paternal grandmother and paternal aunt (Kenya), whom mother mentioned to the child welfare worker, could also have been a source of knowledge of Indian heritage, but the record does not demonstrate whether mother provided or the Agency requested their contact information. Therefore, we are unable to assess any potential "undue burden" associated with "track[ing] down" these extended family members for an ICWA inquiry. (*In re H.B.*, at p. 720; see *Claudia R.*, *supra*, 115 Cal.App.5th at p. 89 ["the social worker never asked Father or the paternal grandmother for the paternal grandfather's contact information" and thus the agency "was missing information" on a branch of the minor's family].)

Even so, the record's silence as to any ICWA-related inquiry beyond paternal aunt (Sonya) requires conditional remand because other paternal relatives were known and " 'reasonably available' " at that time.[15] (*Dezi C.*,

_____

family member' for the purposes of the mandatory initial inquiry requirements of ICWA"].)

[15] We are not persuaded by mother's assertion that "the Agency made no effort whatsoever to identify and contact" numerous family members she mentions now for the first time. Because the record does not show that mother mentioned these individuals previously to the Agency or provided their contact information, we do not fault the Agency for failing to interview

14

*supra*, 16 Cal.5th at p. 1140.) We therefore conditionally reverse the order terminating parental rights and remand for the Department to fulfill its investigatory duties under ICWA and for the court to hold a hearing to determine whether ICWA applies. (See *Dezi C.*, at p. 1137; *In re Kenneth D.*, *supra*, 16 Cal.5th at pp. 1100–1101.) We note, however, that due to the passage of time, paternal relatives once easily contacted may no longer be. (*In re Q.M.*, *supra*, 79 Cal.App.5th at p. 1082 ["we believe it reasonable in many cases to require [the agency] to follow up on leads provided by the parents, we cannot ask the agency to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided"].) Accordingly, because we cannot assess any potential "undue burden" associated with "track[ing] down" paternal family members now to inquire as to potential Indian heritage, we do not direct the contact of specific individuals. (*In re H.B.*, *supra*, 92 Cal.App.5th at p. 720.) Instead, we trust the Agency will conduct the necessary ICWA investigation of the " 'reasonably available' " paternal family members consistent with *Dezi C.*, at page 1140.

## DISPOSITION

The juvenile court's termination of mother's parental rights is conditionally reversed. The case is remanded with directions to order the Agency to comply with ICWA's inquiry, notice, and documentation provisions.

---

them. (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082; *D.S.*, *supra*, 46 Cal.App.5th at p. 1053 [because the child welfare "[a]gency is not required to 'cast about' for information or pursue unproductive investigative leads"]; *Dezi C.*, *supra*, 16 Cal.5th at p. 1140 ["section 224.2 'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries' "].)

If the juvenile court finds that the minor is an Indian child, it must proceed in conformity with all provisions of ICWA. If, on the other hand, the juvenile court finds that the minor is not an Indian child, the judgment terminating parental rights shall be reinstated.

DESAUTELS, J.

We concur:

STEWART, P. J.

MILLER, J.

*In re R.S.* (A174266)